Good morning, Your Honor. Good morning. Martín Guajardo, on behalf of Salesh Kumar. I imagine the most difficult part of the argument for me today is... And you know what? These microphones aren't the best, so if you can just speak up a little more, I think that will help us. Thank you. I imagine the most difficult part of the argument for me today is to try to find a way to convey to the court why Mr. Salesh Kumar is eligible for 212C relief. I think it's a practical matter. We find ourselves in a bit of a practical quandary. You have Mr. Kumar, who was married in Fiji in 1991, a permanent resident of the United States. He waited three years or so before the American Embassy processed his immigrant visa, and then he came to the United States. And our exhibit, I believe it's exhibit B, has a copy of his immigrant visa where he enters the United States on March 4th, 1995. No more than just a little over a year, he is charged and convicted of forcible rape with a foreign object and a false imprisonment. And he spends 186 days in county jail over in Contra Costa. And on the day that he changes his plea, that same day, that evening, he is released from Contra Costa. And the agreement, the plea agreement, is that he will accept probation and the five-year sentence to state prison will be suspended. Before we get into where I think you're going, which is the specific convictions and the time frame, you probably more than us know that this tracing through all these statutes is a maze. Let me ask you about exhaustion and if that does anything to your case. It seemed to me that he didn't ever file an application under the former Section 241. And then also when he wanted habeas relief, he still had his motion pending over at the BIA. So I'm wondering whether there's jurisdiction to hear the habeas because he didn't exhaust those remedies. I think in some instances we can look at a case and determine that the exhaustion in and of itself may not change the result. And here I think that in hindsight, Mr. Olson put in his exhibit a copy of the decision of the Board of Immigration Appeals of March 12, 2003. So if I may, just for a moment, Salesh Kumar leaves to Canada and is in Canada in June. Well, but before you go there, why don't you answer as a legal matter. I know a lot of times, you know, we feel bad about exhaustion dismissals because we know it might come back the same way, but that there's a reason for exhaustion and that is somebody else figures this out in their context before we review it. So I'm just wondering as a legal matter, do you have a way out of the exhaustion issue? I think that my only response to the court is could there be exhaustion if there was no remedy available at the time that he appeared before the Immigration Service. And the answer to that question is he had no remedy because if we look at the date that he entered, he entered the country as a permanent resident in March of 1995. So it is not until March of 2002 that he actually becomes eligible, if at all, to file an application form I-191, which is pursuant to the old 212C. But 212C did not become available to him, if at all, only after the decision from the Supreme Court in St. Cyr. And that occurred in June of 2001. It was in June of 2001 that Salesh Kumar found himself attempting to go through the inspection process in Calgary and then made it to the United States and was deferred. And it was in the summer of 2001 and then in September of 2001 that the Immigration Service finally issues a notice, a charging document, a notice to appear against him. The question is when the government, when the agency issued a charging document against Salesh Kumar in September of 2001, was he eligible for anything? Was he eligible for the relief that we're asking for? And the answer is no. I would be the first one to step forward and say he was not. He did not have the seven years' requisite time to be able to make that application. It is, there was an attorney that the court knows already, there was an attorney that was attempting to secure a vacation of the conviction of Ritiver Corum Novus. They were successful in obtaining a 1203.4, and I believe part of that is in the exhibits that are here. But at the time that the agency issues the charging document, he's not eligible. Half a year elapses, more than half a year, before he actually comes to full circle to the seven years, if at all that someone could say in court, whether it would be the agency, whether it would be the immigration judge or the defense lawyer, to come forth and say, I think he may be eligible because now he's met the seven years. That raises a number of other issues for us that we've seen in the district court, that Judge Jenkins actually, that those issues were presented to him. Because when we were at the district court, if we go beyond the exhaustion question now, and we look at, is there eligibility? How can we say that someone who comes in with a green card in 1995, in less than a year and a half, commits a crime, that he has some expectation of being able to have to 12th Street relief? And we know from being in this circuit that there's been permutations that have occurred over the years. I'll ask you about that. His case in the end does seem to rely on figuring out where he fits on this timeline of these statutes. If he entered his NOLO plea after AEDPA, which, although it was close in time, how could there be any reliance on the old 212C? I think that the answer to that question is, in this circuit, we've created a certain amount of fictions that we've worked with when 212C was available prior to AEDPA. In 2006, in the Robles v. INS case, here in this circuit, we looked at an individual who had obtained their green card through amnesty. But do you concede that it's more problematic for you, the fact that the plea was after AEDPA? I mean, if it had been before, wouldn't you have a better argument? The plea occurred on May 16th, I think it is, and he had been incarcerated for 186 days by that time, and the change in the law was less than 30 days before that. Would it be more problematic? I think that it makes us all question how a remedy can be available to someone who, one, at the time that he fled, he wasn't even here seven years. Do you agree that St. Shera does not go far enough to help you here because the plea of NOLO was entered after 212 was no longer in existence? There has to be some other case that gives you that benefit. What case is that? That would be the June 2001 decision in St. Shera. That's what we rely on. Do you think that case carries you free? There isn't any other case that's better for you? There is a – I believe that there may be another case out of the circuit that addressed the issue, and frankly, we've not located it, although I believe Mr. James Todd Bennett was before the court on another case that had a similar issue with regard to someone who was an arriving alien. But we do not have – I may have overlooked it, but I didn't see a case in your brief that took up the situation where the plea is entered after the amendment. That is – that's correct. And what we rely on or what we – St. Shera, the basis of St. Shera was reliance. So that brings me back to Judge McKeown's question. How can you have reliance so that we could say St. Shera applies? I think the way it has to be done is we have gears of different sizes, if you will. If you'll – just for a moment. We have all the law that we've looked at that has allowed 212C to amplify the remedy out of this circuit, and then we have St. Sera coming six years, five years after we lost 212C and discussing reliance and attempting to superimpose St. Sera on decisions that this circuit amplified 212C. There is no good answer to say – there is no answer that I can provide to the court that would say this man had reliance if he'd only been here a year and a few months as a permanent resident, although this court has recognized that it doesn't matter if you didn't have the seven years. At some later date, even if you're here and you were – the order of deportation was entered five, six years before, if we find that you gained the seven years during the time that the case was in litigation, we'll send you back over to the Board of Immigration Appeals. That's what was done before. All right. We'll hear from the government. Thank you. Good morning, Your Honors. Edward Olson on behalf of the Respondent, John Ashcroft. The district court properly dismissed the habeas petition for two primary reasons. One is failure to exhaust available remedies. And two – Failure to what? Failure to exhaust available remedies. I thought the district court did not rule on exhaustion but went straight to the issue at hand. At the end of the district court's opinion in a footnote, the district court says that habeas petition would also be – habeas relief would also be inappropriate because the petition – I saw that footnote, but I didn't think there was much reliance on it. Do you think that's an alternative? I think that's an alternative basis. I think the merits are the strongest, but I will point out that the petitioner was in removal proceedings after St. Cyr had been issued. St. Cyr was available. The petitioner's counsel did not file an application for 212C relief, and understandably so. Everybody involved, including the immigration judge, appeared to recognize that there was no relief available to the petitioner because St. Cyr provides no assistance to the petitioner. And that leads to the merits, which is the petitioner was placed in removal proceedings after 212C relief had been eliminated, so was not eligible for relief. And then looking at St. Cyr, St. Cyr provides no assistance to the petitioner because unlike St. Cyr, the alien in our case was not eligible for 212C relief at the time he pleaded NOLO to the charge of rape with a foreign object and false imprisonment. And that's because both of those crimes are aggravated felonies, and the petitioner in this case does not dispute that. They're aggravated felonies because they're both crimes of violence, and the petitioner was sentenced to a term of five years. Well, do you agree with counsel the basis of St. Cyr's reliance? Yes. And the government's argument is that they couldn't have justifiably relied because he pled after the amendment. And this is just line drawing. What we're going to do now is line drawing when you get the benefit and when you don't. Has there been a case published in any of the circuits under these circumstances where the plea was soon after the change, and they're arguing that they should still have the reliance benefit of St. Cyr? Well, I can say that I have not seen a case in any circuit in the petitioner's favor in a situation like this where the plea was after AEDPA. Oh, I didn't care whether it's of his favor. I want to know if somebody else has decided it in his favor or not in his favor. Has a decision been made by, is there a published decision on this issue? There is a case, and I'll have to dig through my notes, it's a Judge Trott decision from this circuit in which the petitioner pled NOLO after AEDPA but before ERIRA. And I can find that case and I can provide the court with a citation to that case. Is that cited in your brief? It is cited. It is not cited in my brief to this court. It is cited to the district court. When we conclude the argument, why don't you fill out one of the little forms we have that provides supplemental authority and provide the same citation to counsel as well. Okay. Let me ask you, we got by the St. Cyr problem and somehow we decided it was close enough in time that it would be unfair. We still have the eligibility issue that you raised. But one of the arguments, at least as I understood it from their brief, was that this five-year term that was imposed was for two crimes. So you couldn't tell what was imposed for which crime and therefore you don't have a prima facie aggravated felony by virtue of the sentencing term. Would you respond to that? Yeah, I can respond to that. First of all, the argument below was different. Mr. Guajardo did not raise it. It usually is because we all get smarter as people rule against you, you have to think of another argument. Fair game. The argument below was in reliance on pre-AEDPA law. And pre-AEDPA law, you not only had to be sentenced to five years, you actually had to serve five years. So that was the argument below. In my brief, I pointed out that actually the plea was after AEDPA. So it's irrelevant whether the petitioner actually served five years or not. What's important is that the person was sentenced to five years. So I did not submit in my exhibits a complete set of the conviction records. Now I can do so, and I do have a complete set of the conviction records, and in fact, and I'm not sure if Mr. Guajardo will disagree with me on this or not, but the petitioner, in fact, was given concurrent sentences, both of which were five years. But you're saying actually that the counting argument wasn't raised before the district court. Correct. So for that reason, I didn't see any need to actually submit evidence that the petitioner was, in fact, given concurrent sentences of at least five years. It's a little complicated because the court imposed six-year terms on each but gave him credit for the time that he had spent in county jail and good time credits. So it actually resulted in two five-year terms. I can submit those conviction records to the court. Were they before the district court? They were not before the district court. No, we're foreclosed both in certain arguments as well as evidence once. I understand. We have the whole district court record, and that's what we'll have to base our decision on. I would also just briefly address an alternative basis for upholding the district court's decision. Even if the court were somehow to find that the crimes were not aggravated felonies, for example, another basis for upholding the district court's decision is that at the time the alien pleaded no load to the two crimes, he had only been in this country for a year and a half. And one of the requirements for 212C relief is that you establish seven years of continuous residence. At the time he pleaded, I think it's difficult to say that any expectation he would have of eligibility for 212C relief down the line when he's placed in removal proceedings would be reasonable, because he had no idea when the INS might initiate removal proceedings. You know, as it turns out, he was placed in removal proceedings less than seven years after he entered the country. The BI ultimately issued his decision after he had acquired seven years, but the point is, at the time he pleaded, he had no reasonable expectation that he would acquire seven years in the country. Is that just positive, or do we need to look further? Do we need to, as appellant's counsel is asking us to look at the whole period? Well, I think appellant's counsel's argument is that the seven-year continuous residence requirement, the clock does not stop running. Under the law in effect at the time he pleaded, the clock did not stop running until the BIA had ultimately issued a final decision. And in this case, he actually did acquire seven years of continuous residence before that happened. My argument is that that may be so, but at the time he pleaded guilty, he had no reasonable expectation that that might happen. So I think it's just positive in the sense that you need to show two things for eligibility for 212c relief. One is seven years of continuous residence, and two is that at the time, he had not been convicted of an aggravated felony, and I think he fails on both grounds. Panelists, any other questions? Thank you. Thanks. Mr. Guajardo, you've used up your time, but I'll give you a minute for rebuttal. Your Honor, our Exhibit C has the copy of the Superior Court from Contra Costa of the judgment in the case. So that's Exhibit C, and that sets forth what those terms are. Thank you. Again, I believe that in our case, Your Honor, we have to find that 212c is available. It's of no consequence that he'd only been here a year and a couple of months at the time that he pled, and that is we can find support for that from the decisions from the circuit. And to the extent that the case continued in litigation, there was an appeal, and that decision was made by the board, I believe it was December 20th, as Mr. Olson points out. At that time, either the board could have remanded for 212c relief. In this instance, we know from the exhibits here, we have a copy of the judge's decision, the order of the immigration judge dated August 16th, 2002. That's Exhibit F. We know that the immigration judge in this case did not issue a written decision in the case. He simply filled out a form, one-page form, checked off the box at the top, and signed it at the bottom, issuing an order of deportation. Thank you. The case of Kumar v. Ashcroft was submitted.
judges: Wallace, McKeown, Callahan